CHARLES H. BODY AND RUTH HENRY,

*Plaintiffs and Respondents*

vs.

MAGGIE McDONALD, INDIVIDUALLY AND AS THE SOLE DEVISEE OF W. W. McDONALD, DECEASED,

*Deceased Defendant*

MABEL I. McDONALD WEAVER AND ANNA M. ADAMS WISE,

*Substituted Defendants and Appellants*

(No. 2809; January 20, 1959; 334 Pac. (2d) 513)

For the substituted defendants and appellants the cause was submitted upon the brief of Brimmer and Brimmer of Rawlins, Wyoming, and oral argument by Clarence A. Brimmer, Jr.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of A. G. McClintock of Cheyenne, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

374

## OPINION

Mr. Chief Justice Blume delivered the opinion of the court.

This is an action in the nature of a declaratory judgment and to quiet title to a three-fourths mineral interest in the lands hereinafter described. The court substantially granted the prayer of the plaintiffs and appellees herein, and from the judgment so entered the defendants and appellants herein have appealed to this court. The facts as disclosed by the pleadings and the evidence herein are substantially as follows: On May 29, 1914, George Edwards and Lena B. Edwards, husband and wife, being then the owners of

the property herein described, made and executed a warranty deed to W. W. McDonald in and to the following property: SW¼NW¼, SW¼ Sec. 17; E½NE¼, NE¼SE¼ Sec. 18; W½NE¼, NW¼, W½SW¼, N½SE¼, all of T. 29, R. 80 W., sixth principal meridian, Natrona County, Wyoming. The deed contained the following reservation:

"Excepting and reserving to the said parties of the first part, their heirs and assigns forever an undivided one-fourth (1/4) interest in and to all oil, petroleum and other oil products now located upon or in the said lands, or that may hereafter be taken therefrom. Each of the said parties of the first part is to have and does hereby retain a one half interest in the reservation hereby made."

Thereafter on June 11, 1914, the aforesaid W. W. McDonald joined by his wife, Maggie McDonald, executed and delivered to Albert G. Cheney and Charles H. Body a warranty deed to the aforesaid property. In that deed the grantors granted, bargained, sold and conveyed unto the grantees the aforesaid property, and it contained the following:

"Excepting and reserving to the said parties of the first part [the McDonalds], their heirs and assigns, forever, an undivided one-fourth (1/4) interest in and to all oil, petroleum, and other oil products now located upon or in the said lands, or that may hereafter be taken therefrom. Each of the said parties of the first part is to have and does hereby retain a one half interest in the reservation hereby made."

The deed also contained the statement that the grantors "have good and lawful right to sell and convey the same. And the said parties of the first part [the McDonalds] will and their heirs, executors and administrators shall Warrant and Defend the same against all lawful claims and demands whatsoever."

At the same time the grantees in the last mentioned deed, namely, Body and Cheney, executed a mortgage in favor of William W. (W. W.) McDonald to secure the sum of $5,000. In that mortgage the mortgagors stated that they were well seized of the said premises, in and of a good and indefeasible estate, in fee simple. The mortgage further contained the following statement:

"* * * provided that this mortgage hereby expressly excepts and reserves unto George Edwards and unto Lena B. Edwards, his wife, their heirs and assigns, forever, an undivided one-fourth interest in and to all oil, petroleum and other oil products now located upon or in the said lands, or that may hereafter be taken therefrom, in the proportion of one half interest in the said exception and reservation hereby made, to each of said parties, to wit: George Edwards and Lena B. Edwards;"

The evidence of Charles H. Body herein shows that he knew of the reservation in the deed of the Edwardses to the McDonalds and that he, the said Charles H. Body, had been in possession of the premises since the time that he and his associate received a deed to the premises above mentioned. It further appears herein that one of the plaintiffs, Ruth Henry, is the successor in interest of Albert G. Cheney, and that Mabel I. McDonald Weaver and Anna M. Adams Wise are the successors in interest of W. W. McDonald and his wife, Maggie McDonald. Charles H. Body died on May 22, 1957, after the judgment was entered in the case below, and left his widow, Ruby Body, as his sole heir and devisee; and upon motion filed in this case, dated May 9, 1958, she was substituted as one of the plaintiffs and respondents herein.

The trial court entered judgment, stating in part as follows:

"The court concludes that either by estoppel or resulting trust the reservation contained in the said deed of June 11 and 12, 1914 is held by the Defendants for the use and benefit of George Edwards and Lena B. Edwards as such interest was set forth in the deed of May 29, 1914, if said interest is presently outstanding and claimed by the said George Edwards and Lena B. Edwards or their successors in interest."

The court further quieted the title of three-fourths of the mineral interest in and to the lands in the plaintiffs Charles H. Body and Ruth Henry and enjoined and debarred defendants herein from setting up any claims of right, title or interest in and to three-fourths of the mineral interest in the lands above mentioned. As stated before, the defendants herein have appealed from this judgment.

The plaintiffs herein contend that as they are the owners of three-fourths of the minerals contained in the lands above described and since one-fourth of the mineral rights is outstanding in favor of Edwards and his wife (or their privies), the defendants herein have no mineral interest in the lands whatsoever.

The defendants, on the other hand, while not questioning the one-fourth mineral interest outstanding in favor of Edwards and his wife, claim that they are the owners of one-fourth of the minerals contained in the lands aforesaid according to the reservation in the deed by McDonald and his wife to Albert G. Cheney and Charles H. Body.

1. It may be conceded for the purposes of this case that the deed from the McDonalds, dated June 11, 1914, to Body and Cheney is plain and unambiguous and cannot be varied by parol evidence. By that deed the McDonalds conveyed to the grantees in that deed

the whole of the lands above described excepting only a one-fourth mineral interest. In other words, the McDonalds conveyed under a warranty of title, aside from the surface of the land, three-fourths interest in and to the minerals contained therein. Having thus vested the title to three-fourths of the minerals in and to the grantees, the McDonalds and their successors in interest are estopped from claiming that the grantees and their successors in interest have less than three-fourths of the mineral rights in the land. In 31 C.J.S. Estoppel § 10, it is said:

"Estoppel by deed is a bar which precludes a party to a deed and his privies from asserting as against the other and his privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted in it. * * * The doctrine of estoppel by deed is applied in order to avoid circuity of action, and to compel the parties to fulfill their contracts."

Again in 31 C.J.S. Estoppel § 13, it is stated:

"A person who assumes to convey an estate by deed, or his successor, is estopped, as against the grantee, or those in privity with him, to assert anything in derogation of the deed; he will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, nor can he deny to the deed its full operation and effect as a conveyance. * * * A warrantor of title may not question the validity of the title warranted, nor may he assert an outstanding hostile title.* * *"

See also 19 Am.Jur. Estoppel §§ 5 to 10 inclusive.

A situation similar to that appearing in this case is discussed in a number of cases which sustain the judgment of the court rendered in the present action. Brown v. Kirk, 127 Colo. 453, 257 P.2d 1045; Mer-

chants & Manufacturers Bank v. Dennis, Miss., 91 So. 2d 254; Salmen Brick & Lumber Co., Limited, v. Williams, 210 Miss. 560, 50 So.2d 130; Garraway v. Bryant, 224 Miss. 459, 80 So.2d 59, 61 A.L.R.2d 1387; Murphy v. Athans, Okl., 265 P.2d 461; Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166; Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878. Syllabus 3 in Salmen Brick & Lumber Co., Limited, v. Williams, supra, states as follows:

"Where grantor had property conveyed to it with one-half mineral exception and subsequently said grantor conveyed property by warranty deed conveying fee-simple title to property but containing exception clause almost identical to that used in original deed to grantor, exception clause in second deed merely described interest owned by grantor, and therefore effect of second deed was to convey to grantee exactly what grantor had received under its original deed and grantor retained for itself none of mineral interest by such deed."

In the Duhig case, supra, syllabus 1 is similar to the foregoing and syllabus 2 states as follows:

"Where warranty deed, executed by grantor to whom realty had been conveyed with reservation of one-half undivided interest in mineral rights, expressly retained undivided one-half interest in mineral rights and purported to convey all other interest in the realty, covenant of general warranty in the deed operated as an 'estoppel' denying to the grantor and those claiming under him the right to set up a claim to one-half undivided interest in mineral rights."

The court mentioned the fact that the grantor in the second deed should not be permitted to hold the mineral interest reserved by his deed and to require his grantee to seek redress in a suit for breach of the warranty. The court quoted the rule relating to after-acquired property and stated at 144 S.W.2d 880:

"* * * What the rule above quoted prohibits is the *assertion* of title in contradiction or breach of the warranty. If such enforcement of the warranty is a fair and effectual remedy in case of after-acquired title, it is, we believe, equally fair and effectual and also appropriate here."

The other cases above mentioned are similar in effect and establish we think conclusively that in the case at bar the defendants in this case cannot question the fact that the plaintiffs herein own three-fourths of the mineral interest in and to the lands above described, and that since one-fourth of the mineral interest is outstanding in favor of Edwards and his wife (or their privies), defendants under the facts herein own no mineral interest in the lands in question here.

2. It is contended by the defendants herein that extrinsic evidence was not admissible for the purpose of explaining the deed from the McDonalds to Cheney and Body, since the deed is plain and all prior transactions are merged therein. See 32 C.J.S. Evidence § 913. So, they say, the deed from Edwards and his wife to McDonald should not be considered herein. The action herein is one for a declaratory judgment and for the purpose of quieting title. The plaintiffs in their petition set out and put in issue the deed from George and Lena B. Edwards as well as the deed from the McDonalds to Cheney and Body. If George and Lena B. Edwards had been made parties in this case (and it would, perhaps, have been better if they had been) and had introduced the deed in evidence, it is clear that the court would have been required to consider that deed in connection with the McDonald deed. We think the situation in this case is substantially the same as though George and Lena B. Edwards had been made parties herein, at least for the reason that

the defendants in their answer admitted the execution of the deed from George and Lena B. Edwards which contained a reservation of a one-fourth mineral interest in the lands in question and do not question its validity. As we understand it, the contention of the defendants herein is that George and Lena B. Edwards own a one-fourth mineral interest and that the defendants herein own another one-fourth mineral interest. Now, as we have already noted, the defendants are estopped from claiming that the plaintiffs herein are not the owners of a three-fourths mineral interest in and to the lands herein involved. The other fourth is either owned by the defendants herein or by George and Lena B. Edwards and, since it is admitted herein, or it is at least not denied, that George and Lena B. Edwards (or their privies) have a one-fourth mineral interest, it must follow that the claim of the defendants herein to the effect that they are the owners of one-fourth cannot be valid. It may be noted that the cases cited in point number one of this opinion all considered deeds similar in effect to the Edwards deed in this case. We think the contention above made must be overruled.

It is further contended by the defendants herein that the mortgage given by Cheney and Body to McDonald should not have been admitted in evidence. The effect of the admission of that mortgage was merely to show the intention of the parties. As we have above noted, it is clear that the plaintiffs are the owners of three-fourths of the mineral interest and that the defendants herein own no mineral interest at all. Hence, the admission of that mortgage in evidence was harmless error, if error at all.

It is further contended that the plaintiffs failed to sustain their burden of proof requiring clear and con-

vincing evidence to change the apparent meaning of the McDonald deed of June 11, 1914. From what we have said, it is clear that the contention must be overruled.

3. As heretofore stated, Charles H. Body testified that when he and Cheney received the deed of June 11, 1914, from the McDonalds he knew that one-fourth mineral interest in the lands was outstanding in favor of George and Lena B. Edwards under the deed of May 29, 1914. So counsel for the defendants contend that the doctrine of estoppel cannot be applied herein because it is inapplicable when the parties had full knowledge of the facts. That seems to be the crux of the contention of counsel for the defendants herein. They think that this case is distinguishable from the cases cited in point one of this opinion, including the Duhig case, by reason of that fact. It is true that matter was not mentioned in those cases, but inasmuch as purchasers of real property usually examine the title thereto, it is highly probable that the purchasers in those cases had knowledge of an outstanding mineral interest just as is true in the case at bar. While conjecture, it is not unlikely that the matter was not considered worthy of attention either by counsel in those cases or by the courts rendering the decisions. Counsel cite us to numerous authorities involving an estoppel in pais or equitable estoppel. These authorities are not in point. Learned counsel have failed to distinguish between an estoppel in pais and an estoppel by deed. In the case of McAdams v. Bailey, 169 Ind. 518, 82 N.E. 1057, 1059, 13 L.R.A.N.S. 1003, 124 Am. St.Rep. 240, the court said:

"* * * Lord Coke observes that although estoppels are odious, yet warranties are favored in law, being part of a man's assurance. 2 Institutes, 219. It is a

mistake to liken an estoppel by deed to an estoppel in pais.* * *"

We have seen that the McDonalds, by the deed of June 11, 1914, granted to Cheney and Body unconditionally and without qualification three-fourths of the mineral interest in the lands involved herein and warranted the title thereto. Counsel for defendants would whittle down that grant and warranty—since the Edwardses' interest is outstanding—from three-fourths to one-half of the mineral interest. No authority that this may be done has been cited and we have found none. A discussion in point contrary to the contention of defendants is found in the case of Ayer v. Philadelphia & Boston Face Brick Co., 159 Mass. 84, 34 N.E. 177, 178, a decision written by Justice Holmes, although that case involved an after-acquired title. In that case it was held that when a man gives a second mortgage but covenants and warrants as against the first mortgage and afterwards obtains title through a foreclosure of the first mortgage, his title thereby acquired inures to the benefit of the second mortgagee. In that case the parties knew that there was a first mortgage outstanding but that made no difference. Said the court in part:

"* * * A subsequent title would inure to the grantor when the grant was of an unincumbered fee, *although the parties agreed by parol that there was a mortgage outstanding,* (Chamberlain v. Meeder, 16 N.H. 381, 384. See Jenkins v. Collard, 145 U.S. 546, 560, 12 Sup. Ct.Rep. 868, 36 L.Ed 812,) and this shows that the estoppel is determined by the scope of the conventional assertion, not by any question of fraud or of actual belief. But the scope of the conventional assertion is determined by the scope of the warranty which contains it. Usually the warranty is of what is granted, and therefore the scope of it is determined by the scope of the description; but this is not necessarily so, and

when the warranty says that the grantor is to be taken as assuring you that he owns and will defend you in the unincumbered fee, it does not matter that by the same deed he avows the assertion not to be the fact. The warranty is intended to fix the extent of responsibility assumed, and by that the grantor makes himself answerable for the fact being true. In short, if a man by a deed says, 'I hereby estop myself to deny a fact,' it *does not matter that he recites as a preliminary that the fact is not true.* The difference between a warranty and an ordinary statement in a deed is that the operation and effect of the latter depend on the whole context of the deed, whereas the warranty is put in for the express purpose of estopping the grantor to the extent of its words. The reason 'why the estoppel should operate is that such was the obvious intention of the parties.' Blake v. Tucker, 12 Vt. 39, 45." (Emphasis supplied.)

That discussion was cited with approval in McAdams v. Bailey, supra. If the force and effect of a warranty could not be affected or diminished by knowledge of an outstanding title in these cases, neither could it be in the case at bar. The contention here made is overruled.

4. Counsel for defendants contend and pleaded that the action herein is barred by the statute of limitations. They cite, among other authorities, the case of Town of Glenrock v. Abadie, 71 Wyo. 414, 259 P.2d 766, 776, id. 72 Wyo. 111, 262 P.2d 393. That case is not in point. It involved the question of a reformation of a deed. No such question as that is involved in this case. It is stated in 74 C.J.S. Quieting Title § 48: "Limitations may be invoked as a defense to the action, except where plaintiff is in the actual possession of the land and claims to be the owner thereof." In this case Charles H. Body has at all times been in possession of the lands involved herein. In 54 C.J.S. Limitations of Actions § 124, p. 36, it is stated:

"A cause of action to quiet title or for the removal of a cloud on title has been said to be a continuing one, and never barred by limitations while the cloud exists. The statute of limitations does not begin to run in favor of defendant in an action to quiet title, or remove a cloud, so that he may invoke its running for the prescribed period as a defense, until some assertion of right or title to the premises has been made by him and until such assertion of right or title to the premises has been brought to the knowledge of plaintiff.* * *"

In 1 Anderson, Declaratory Judgments, 2d ed., p. 783, it is stated:

"The statute of limitations in a declaratory action does not begin to run against a right to maintain the same, until an actual controversy has accrued or occurred, and undisclosed conflicting claims between persons bearing jurial relations do not constitute a controversy which would set in operation the statute of limitations against the action for declaratory relief. Until an actual controversy has arisen between the parties no cause for declaratory relief has accrued and the statute of limitations is not operative. So it would seem to follow, that until there is a dispute as to the making or interpretation of a contract, no right to maintain a declaratory action has accrued."

In the case at bar it does not appear when a controversy arose or when the defendants claimed any mineral interest as involved herein. For aught we know the defendants claimed no mineral interest in this case until they were served with process. Hence, it is clear under the foregoing authorities that the contention herein that the action is barred by the statute of limitations must be overruled. See further on that subject 44 Am.Jur. Quieting Title § 63, p. 47.

From what we have said it is apparent that the judgment must be and is affirmed.

Affirmed.