**Frank KADRMAS and Betty Jane Kadrmas, Plaintiffs and Respondents,**

v.

**Kathleen SAUVAGEAU, Administratrix of the Estate of Emil Sauvageau, Deceased, Defendant, Third-Party Plaintiff and Appellant,**

and

**The State of North Dakota and the Pure Oil Company, a corporation, Third-Party Defendants.**

Civ. No. 8670.

Supreme Court of North Dakota.

June 22, 1971.

**754**

Freed, Dynes & Malloy, Dickinson, for defendant, third-party plaintiff and appellant.

Greenwood, Swanson, Murtha & Moench, Dickinson, for plaintiffs and respondents.

TEIGEN, Judge.

The issue in this appeal is whether a mineral exception and reservation contained in the granting clause of a warranty deed effectively excepted and reserved in the grantors a one-half mineral interest.

On March 13, 1962, Emil P. Sauvageau and Kathleen M. Sauvageau, husband and wife, conveyed by warranty deed to Frank Kadrmas and Betty Jane Kadrmas the Southeast Quarter of Section 11, Township 139, Range 99, and other lands. In the granting clause of the warranty deed and immediately following the description of the land is contained the following exception and reservation:

"excepting and reserving unto the grantors One-half (½) of all oil, gas, Uranium and all other minerals, together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, developing and marketing the said oil, gas, uranium and all other minerals on the SE¼ of section 11, 139, 99".

The grantors owned only one-half of the minerals, the other one-half belonging to the State of North Dakota. The habendum, or warranty portion of the deed, makes no exception or reservation; it warrants the title to all that is conveyed. The trial court held that the Sauvageaus conveyed all their interest in the land and have no right, title or interest in or to the premises. The Sauvageaus have appealed from the adverse judgment in the main action. They specify the court erred in quieting title in the Kadrmases to one-half of the minerals.

We find that the trial court made the correct decision. No oral testimony was introduced at the trial. The case was presented, for decision, on written documents. The Sauvageaus purchased the land from the State on contract. The contract was not recorded in the office of the register of deeds. It provided that the State would reserve fifty percent of the

minerals. Prior to the time the Sauvageaus received title from the State, they sold the land to the Kadrmases on contract. The contract excepted and reserved fifty percent of the minerals to the Sauvageaus. Two years later the warranty deed in question was executed and delivered by the Sauvageaus to the Kadrmases. The deed contained the reservation set forth above. The following day the State of North Dakota quitclaimed to the Sauvageaus. The quitclaim deed reserved to the State fifty percent of the minerals, as required by Section 38–09–01, N.D.C.C. This quitclaim deed was dated March 14, 1962. Subsequent thereto, this action was commenced by the Kadrmases against the Sauvageaus to quiet the title to the land. The Sauvageaus answered and counterclaimed, praying for judgment declaring them the owners of an undivided one-half interest in the minerals. The Sauvageaus impleaded the State of North Dakota, seeking to have the State's reservation of one-half of the minerals adjudged null and void and to quiet the title thereto in the Sauvageaus. The third-party action was based on the claim that the reservation was contrary to the statutes of the State of North Dakota. The State, in its answer to the third-party complaint, prayed that title to one-half of the minerals be quieted in the State. Both matters came on for trial and the trial court entered judgment quieting the title in the State to one-half of the minerals and in the Kadrmases to the surface and one-half of the minerals. No appeal was taken from the judgment in the third-party action quieting title to one-half of the minerals in the State. Thus, as between the Sauvageaus and the State, it is now judicially established that the State is the owner of a one-half interest, and the Sauvageaus owned only a one-half interest which they could convey.

■ The warranty deed from the Sauvageaus to the Kadrmases is regular in form. On its face it purports to grant the surface and one-half of the minerals to the Kadrmases, and to except and reserve one-half of the minerals to the Sauvageaus. The habendum and warranty clauses contain no exceptions. No part of the deed discloses that one-half of the minerals had been reserved by the State or that the Sauvageaus owned only one-half of the minerals. The question is: could the Sauvageaus retain one-half of the minerals when they warranted the title to one-half and owned but one-half? The Sauvageaus do not seek to reform the deed. They seek to have the title to one-half of the minerals quieted in them, relying on the exception and reservation contained in the granting clause of the deed to the Kadrmases. There is no claim made that the Kadrmases had knowledge, either direct or constructive, of the State's ownership in the minerals, or that the Sauvageaus did not own all of the minerals.

It is a well-established rule that a general conveyance of land, without any exception or reservation of the minerals therein, carries with it the minerals as well as the surface. 54 Am.Jur.2d Mines and Minerals, Sec. 108; 58 C.J.S. Mines and Minerals § 146 b; 3 American Law of Mining, Sec. 15.13.

■ The warranty deed from the Sauvageaus to the Kadrmases, dated March 13, 1962, is plain and unambiguous. By that deed the Sauvageaus conveyed to the Kadrmases the whole of the lands described, excepting only a one-half mineral interest. In other words, the Sauvageaus conveyed, under warranty of title, aside from the surface of the land, a one-half interest in and to the minerals contained therein.

"All covenants contained in a grant of an estate in real property, which are made for the direct benefit of the property or some part of it then in existence, run with the land. Such covenants included covenants:

1. Of warranty;"

Section 47–04–26(1), N.D.C.C.

"A warranty as such does not enlarge the estate conveyed but it may operate as

an estoppel." Aure v. Mackoff, 93 N. W.2d 807 (N.D.1958).

"Estoppel by deed is a bar which precludes a party to a deed and his privies from asserting as against the other and his privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted in it."

31 C.J.S. Estoppel § 10, p. 295.

" 'Estoppel by warranty' is a species of estoppel by deed. It is an estoppel based on the principle of giving effect to the manifest intention of the grantor appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor from derogating from or destroying his own grant by any subsequent act."

31 C.J.S. Estoppel § 10, p. 297.

Further, in 31 C.J.S. Estoppel § 13, it is stated:

"A person who assumes to convey an estate by deed, or his successor, is estopped, as against the grantee, or those in privity with him, to assert anything in derogation of the deed; he will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, nor can he deny to the deed its full operation and effect as a conveyance."

31 C.J.S. Estoppel § 13, p. 298.

"A warrantor of title may not question the validity of the title warranted, nor may he assert an outstanding hostile title."

31 C.J.S. Estoppel § 13, p. 300.

See also 28 Am.Jur.2d Estoppel and Waiver, Sections 4 through 9.

We conclude that the Sauvageaus could not convey and warrant, and reserve and retain, the same thing at the same time, but the warranty obligation is superior to the Sauvageaus' reservation rights. Similar results have been attained in other states in similar cases. Garraway v. Bryant, 224 Miss. 459, 80 So.2d 59; Merchants & Manufacturers Bank v. Dennis, 229 Miss. 447, 91 So.2d 254; Brannon v. Varnado, 234 Miss. 466, 106 So.2d 386; Lucas v. Thompson, 240 Miss. 767, 128 So. 2d 874; Body v. McDonald, 79 Wyo. 371, 334 P.2d 513; Brown v. Kirk, 127 Colo. 453, 257 P.2d 1045; Murphy v. Athans, 265 P.2d 461 (Okl.1954); Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166; Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878.

For reasons stated herein, the judgment is affirmed.

STRUTZ, C. J., ERICKSTAD, PAULSON, and KNUDSON, JJ., concur.